GREGORY SIDDI, et al.                                    PLAINTIFFS

          v.              Civil No. 05-5170

OZARK AIRCRAFT SYSTEMS, LLC,
et al.                                                   DEFENDANTS


MHAMDI BEN AHMED                                         PLAINTIFF

          v.              Civil No. 05-5206

OZARK AIRCRAFT SYSTEMS, LLC,
et al.                                                   DEFENDANTS


## <u>ORDER</u>

NOW on this 21st day of November, 2006, the above referenced matter comes on for this Court's consideration of **International Lease Finance Corporation and David G. Fulford's Motion to Sever and Dismiss Based on *Forum Non Conveniens*, or in the Alternative, To Strike and Dismiss for Failure to State a Claim and Lack of Capacity to Sue** (document #19).  The Court, being well and sufficiently advised, finds and orders as follows:

1.  This matter arises out of the crash of Flash Airlines Flight 604 ("Flight 604") into the Red Sea on January 3, 2004 off the coast of Egypt.  Flight 604 was en route from Sharm el Sheikh,

Egypt, to Paris, France.  The plaintiffs[1] in this case have named as defendants International Lease Finance Corporation ("ILFC"), Ozark Aircraft System ("Ozark"), and certain employees of both ILFC and Ozark.

The plaintiffs assert diversity of citizenship jurisdiction and claim that venue is proper in the Western District of Arkansas because separate defendant Ozark resides in this district. Further, the plaintiffs claim that a substantial part of the events or omissions giving rise to the claims occurred in this district.

2.    Separate defendants ILFC and David Fulford now move to sever and dismiss the claims against them based on the doctrine of forum non conveniens.  Alternatively, ILFC and Fulford argue that the plaintiffs' complaint against them should be dismissed because it fails to state a claim and because certain plaintiffs lack the capacity to sue.

3.    Plaintiffs' complaint asserts the following facts:

*    The aircraft which crashed was designed, manufactured, and assembled by the Boeing Company and was sold and delivered to ILFC on or about October 22, 1992.  Siddi Complaint, ¶ 4.

*    During all times relevant, Ozark operated an aircraft

---

[1]The Court previously entered an order consolidating <u>Ahmed v. Ozark Aircraft Systems, L.L.C., et al.,</u> 05-5206 with <u>Siddi v. Ozark Aircraft Systems, L.L.C.,</u> 05-5170.  Unless otherwise noted, the Court will refer to the plaintiffs collectively.

repair station pursuant to authority issued by the U.S. Federal Aviation Administration.  Siddi Complaint, ¶ 5.

* On or prior to November 19, 1999, ILFC engaged the services of Ozark to perform work on the subject aircraft.  Siddi Complaint, ¶ 7.

* Prior to and through January 3, 2004, ILFC leased and entrusted the subject aircraft to Flash Airlines ("Flash"), an Egyptian air carrier.  Siddi Complaint, ¶ 9.

* In or about February 2003, Flash notified ILFC of a defect in the rudder power control unit and autopilot of the subject aircraft and sought the advice of ILFC in order to correct the problem.  Siddi Complaint, ¶ 10.

* On or about February 27, 2003, ILFC, Ozark and others represented or warranted to Flash that the alleged defect did not pose a hazard to the safety of the subject aircraft.  Siddi Complaint, ¶ 12.

* On January 3, 2004 the subject aircraft was being operated as Flash Airlines Flight 604.  While being operated, it deviated from controlled flight and crashed into the waters of the Red Sea.  As a result of the crash all people aboard the aircraft were fatally injured.  Siddi Complaint, ¶ 13-17.

4.  Additionally, the following uncontested facts have been presented in the pleadings surrounding the instant motion:

* The crash of the subject aircraft resulted in the death

of all 148 occupants of the aircraft.

  *   Pursuant to Annex 13 of the Convention on International Civil Aviation, the Egyptian Ministry of Civil Aviation ("MCA") is conducting the official investigation into the cause of the crash. France's Bureau d'Enquete et d'Anlayses and the United States National Transportation Safety Board are also participating in the Egyptian investigation.

  *   At the time of the accident, Flash Airlines was a charter airline licensed by Egyptian civil aviation authorities with its headquarters and base of maintenance operations in Cairo, Egypt.

  *   Flash had only two aircrafts in its operating fleet and generally provided charter air services to fly tourists between points in Europe or the Middle East and Egypt.

  *   Flash's records concerning operations, training of flight crews, and governmental oversight that are relevant to the question of whether Flash or its flight crew was negligent, caused the accident, or failed to respond properly to recover the aircraft after an initial upset are located in Egypt.

  *   Flash leased the subject aircraft from ILFC in 2001.

  *   ILFC did not oversee Flash's day to day operations, maintenance of the aircraft, or training and assignment of Flash's flight crew.

  *   Flash did not fly to the United States.

*      All but one aircraft component from the wreckage that has been recovered is in the possession of the MCA in Egypt.

*      ILFC possesses the administrative and financial records regarding the subject aircraft relating generally to the leasing arrangements.    The documents in ILFC's possession total approximately 600-700 pages.

*      ILFC's headquarters and the vast majority of its operations are located in Los Angeles, California.

*      At the time Ozark ceased operations[2], it forwarded to ILFC all of the business records in its possession relating to the work done on the subject aircraft.    Such documents remain in ILFC's possession in California at this time.

*      There are four to six current and former employees of ILFC with relevant knowledge regarding the accident or the subject aircraft.    Those individuals are located in California, Alabama, and New York.

*      150 plaintiffs in 56 consolidated cases previously presented wrongful death claims against ILFC, The Boeing Company, Parker Hannifin and Honeywell International, Inc. To the United States District Court for the Central District of California, Western Division arising from the crash of Flash Flight 604.

*      Included in the 56 consolidated cases presented in

---

[2]Although ILFC states that Ozark has now ceased business, and that assertion has not been disputed, the pleadings do not set forth *when* Ozark ceased business.

California was <u>Siddi v. Int'l Lease Finance Corp</u>, et al., 04-cv-10162, an action by the mother of Ernest Siddi as the personal representative of his estate.

* The 56 consolidated cases presented in California were conditionally dismissed on the grounds of forum non conveniens in favor of allowing the matter to proceed before the Tribunal de Grande Instance ("TGI") of Bobigny, France (French Tribunal Court). *See* <u>Gambra v. Int'l Lease Finance Corp</u>, et al., 377 F.Supp.2d 810 (C.D. Calif. W.D. 2005).

* The TGI is presently adjudicating claims against Flash Airlines as the Warsaw Convention mandates that any claims against Flash Airlines on behalf of a passenger on the subject flight be brought in France or Egypt, but not in the United States.

* The Bobigny, France public prosecutor has also initiated a criminal investigation to determine the cause of the accident.

* On January 3, 2006, approximately 80 additional plaintiffs filed wrongful death actions in the Central District of California. The Court approved the stipulated dismissal of the additional plaintiffs subject to the same conditional transfer to France outlined in the <u>Gambra</u> decision.

* Those plaintiffs are included in the 646 claimants that have filed claims in the civil court in Bobigny, France against ILFC, Flash, Boeing, Parker-Hannifin, and Honeywell.

* Gregory Siddi, Jerome Siddi and Frederic Siddi are

residents of France.

    \*    Ernest Siddi, the decedent, was a resident of France.

    \*    Mhamdi Ben Ahmed is a resident of France.

    \*    Fatima Hjiaj, the decedent, was a resident of France.

    \*    Mhamdi Ben Ahmed has already instituted actions against ILFC and France in the litigation now pending in France.

    \*    Other heirs and beneficiaries of Ernest Siddi, including Jacqueline Siddi his personal representative, have also filed claims against ILFC and Flash in France.

    5.    The plaintiffs' complaint asserts the following causes of action:

    \*    **FIRST** – plaintiffs allege that ILFC was negligent in the entrustment of the subject aircraft to Flash. Plaintiffs allege that ILFC knew or had reason to know that Flash would operate, maintain and use the subject aircraft in a manner that involved unreasonable risk of physical harm to those aboard. Siddi Complaint, ¶ 20-24.

    \*    **SECOND** – plaintiffs allege that it was the duty of ILFC, and its employee, David Fulford, to exercise reasonable care in the ownership, leasing, operation, maintenance, repair and control of the subject aircraft so as not to cause injury to the members of the public; and, that ILFC and its employees are negligent in that they breached those duties. Siddi Complaint, ¶ 25-29.

    \*    **THIRD** – plaintiffs allege that ILFC and its employee,

David Fulford, are liable for punitive damages as they knew or had reason to know that there was a high degree of probability that their actions would result in injury; their conduct showed complete indifference to and conscious disregard for the safety of others; and, their conduct was reckless and/or grossly negligent. Siddi Complaint, ¶ 30-32.

* **FOURTH** – plaintiffs allege that ILFC is strictly liable to the plaintiffs in that at the time the subject aircraft was delivered to Flash by ILFC, the aircraft contained certain conditions which rendered the aircraft defective, unreasonably dangerous and/or unfit for its intended use. The plaintiffs further allege that as a direct and proximate result of the aircraft's condition, it crashed into the Red Sea causing fatal injuries. Siddi Complaint, ¶ 33-36.

* **FIFTH** – plaintiffs allege that ILFC is liable to the plaintiffs under the theory of common law bailment. Specifically, plaintiffs allege that, at the time the subject aircraft was delivered to Flash by ILFC, the subject aircraft contained certain conditions which rendered the aircraft defective, unreasonably dangerous and/or unfit for its intended use. The plaintiffs further allege that the defects were known or could have been discovered by ILFC through reasonable inspection. The plaintiffs allege that as a direct and proximate result, the subject aircraft crashed into the Red Sea and caused fatal injuries. Siddi

Complaint, ¶ 37-41.

  *   **SIXTH** – plaintiffs allege that ILFC and its employee, David Fulford, expressly and/or impliedly warranted and represented that the subject aircraft was airworthy, or merchantable quality, fit and safe for the purpose for which it was designed, manufactured, assembled, inspected, tested, sold, serviced, repaired, maintained, intended and used, and further warranted that the subject aircraft was free from defects. Plaintiffs allege that ILFC and Fulford breached those warranties and, as a result, the subject aircraft crashed into the Red Sea and caused fatal injuries. Siddi Complaint, ¶ 42-47.

  *   **SEVENTH** – plaintiffs allege that Ozark and its employees had a duty to exercise reasonable care in the maintenance and repair of the subject aircraft so as not to cause injury to the public. Plaintiffs further allege that Ozark and its employees breached that duty and as a direct and proximate result the subject aircraft crashed into the Red Sea causing fatal injuries. Siddi Complaint, ¶ 48-52.

  *   **EIGHTH** – plaintiffs allege that Ozark and its employees are liable for punitive damages as they knew or had reason to know that there was a high degree of probability that their actions would result in injury; because their conduct showed complete indifference to and conscious disregard for safety of others; and, because their conduct was reckless and/or grossly negligent.

Siddi Complaint, ¶ 53-55.

* **NINTH** – plaintiffs allege that Ozark and its employees expressly and/or impliedly warranted and represented that the subject aircraft was airworthy, of merchantable quality, fit and safe for the purpose for which it was designed, manufactured, assembled, inspected, tested, sold, serviced, repaired, maintained, intended and used, and further warranted that the subject aircraft was free from defects. Plaintiffs allege that Ozark and its employees breached those warranties and, as a result, the subject aircraft crashed into the Red Sea and caused fatal injuries. Siddi Complaint, ¶ 56-61.

6. "The principle of forum non conveniens permits a court to decline jurisdiction even though venue and jurisdiction are proper, on the theory that for the convenience of the litigants and the witnesses the action should be tried in another judicial forum." <u>Mizokami Bros. of Arizona v. Mobay Chemical Corp.</u>, 660 F.2d 712, 717 (8th Cir. 1981)(quoting <u>Dahl v. United Technologies Corp.</u>, 632 F.2d 1027, 1029 (3rd Cir. 1980)). When determining whether to transfer based on the doctrine of forum non conveniens, courts must balance the private interest of the litigants with the public interest of the court. <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501 (1947); <u>Reid-Walen v. Hansen</u>, 933 F.2d 1390, 1393 (8th Cir. 1991); <u>De Melo v. Lederle Laboratories, Div. Of American Cyanamid Corp.</u>, 801 F.2d 1058 (8th Cir. 1986).

Before determining whether this Court should dismiss ILFC and Fulford's claims on the basis of forum non conveniens, however, the Court must first consider whether the claims against ILFC and Fulford can be severed from those asserted against the other defendants.

7.    Rule 21 of the Federal Rules of Civil Procedure provides that "any claim against a party may be severed and proceeded with separately." Fed. R. Civ. Pro. 21. "A district court's decision to sever claims into separate actions is reviewed for abuse of discretion." <u>Reinholdson v. Minnesota</u>, 346 F.3d 847, 850 (8th Cir. 2003).

Plaintiffs argue that the Court should find that the moving parties are necessary and indispensable to the claims against Ozark and its employees and, therefore, severance should be denied. The Court does not agree.

A party is necessary

(1) in the person's absence complete relief cannot be accorded among those already parties, or

(2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may(I) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a). *See also* <u>Dominium Austin Partners, L.L.C.</u>

v. Emerson, 248 F.3d 720, 725 (8ᵗʰ Cir. 2001). In this case, ILFC and Ozark are, at most, joint tortfeasors. The severance of the claims against ILFC and Ozark will in no way impede the plaintiffs' ability to achieve complete relief, nor will severance cause inconsistent obligations to be incurred by any involved party. *See* Temple v. Synthes Corp., Ltd., 498 U.S. 5 (1990)(holding "it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit).

The Court therefore finds that severance under Rule 21 is proper to facilitate a transfer of certain claims to a more convenient forum. Toro Co. V. Alsop, 565 F.2d 998 (8ᵗʰ Cir. 1977); Wyndham Assocs. V. Bintliff, 398 F.2d 614 (2ⁿᵈ Cir. 1968); Apache Products Co. V. Employers Ins. of Wausau, 154 F.R.D. 650 (S.D. Miss. 1994); Cain v. New York State Bd. of Elections, 630 F.Supp. 221 (E.D.N.Y. 1986); General Tire & Rubber Co. v. Jefferson Chemical Co., Inc., 50 F.R.D. 112 (S.D.N.Y. 1970); Mobile Oil Corp. v. W.R. Grace & Co., 334 F.Supp. 117 (S.D. Tex. 1971). The Court, therefore, finds that Rule 21 severance can, and will, be granted if necessary to permit a proper transfer on forum non conveniens grounds.

8. "The *forum non conveniens* determination is committed to the sound discretion of the trial court. It may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors

-12-

and where its balancing of these factors is reasonable, its decision deserves substantial deference." <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 257 (1981).[3] According to the United States Supreme Court, the following considerations should be taken:

> An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. . . .

> Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a

---

[3]ILFC and Fulford argue that this Court should adopt certain findings of the court in <u>Gambra v. Int'l Lease and Finance Corp.</u>, 377 F.Supp.2d 810 (C.D. Calif. 2005) under the theory of issue preclusion. However, while this Court agrees that <u>Gambra</u> is certainly persuasive authority, there are significant differences in the case at bar that prevent <u>Gambra</u> from holding preclusive authority. <u>See</u> <u>Mizokami Bros. of Arizona, Inc. V. Mobay Chemical Corp.</u>, 660 F.2d 712 (8th Cir. 1981).

> diversity case in a forum that is at home with the
> state law that must govern the case, rather than
> having a court in some other forum untangle problems
> in conflict of laws, and in law foreign to itself.

Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-509

(1947)(citations omitted).

There is a strong presumption in favor of the plaintiff's choice of forum; however, where, as here, the plaintiff is foreign, that choice is given less deference. Piper, 454 U.S. at 256.

The Court will now conduct an analysis of the appropriate factors to be considered on the issue.

(a) **Private Interest Factors** -- With respect to the private interest factors, ILFC and Fulford argue the following:

* that they, ILFC and Fulford, are willing -- as a precondition to *forum non conveniens* dismissal of these actions -- to voluntarily submit to the jurisdiction of a French court in actions refiled by the plaintiffs there. They also agree -- as a condition to *forum non conveniens* dismissal of these actions -- to the tolling of any statute of limitations that might apply to such refiled actions for a period of 120 days after dismissal by this Court. Further, to the extent there is any possibility that the French courts will refuse to assert jurisdiction over plaintiffs' claims, ILFC and Fulford suggest -- and agree -- that this Court should condition its dismissal

on the French court's assumption of jurisdiction over the plaintiffs' claims.  *See* <u>Gambra</u>, 377 F.Supp.2d at 816-817;

* that France is the home of the plaintiffs, beneficiaries, and decedents in this case and, therefore, information concerning the plaintiffs' damages is largely located in France;

* that critical witnesses and documents regarding Flash Airlines, civilian aircraft oversight, and the MCA investigation are located in Egypt.  They note that the court in <u>Gambra</u> found that such evidence would be more easily accessible by a French Court than a U.S. Court.  377 F.Supp.2d 810, 819-820;

* that certain relevant evidence is in the hands of Flash Airlines.  They note that the court in <u>Gambra</u> found that such evidence would be more easily accessible by a French Court as Flash is already subject to the French Court's jurisdiction. 377 F.Supp.2d 810, 819-820;

* that the liability evidence in the possession of the defendants would be accessible to the French Court, as the defendants would be parties to the French lawsuit;

* that certain critical witnesses are beyond the reach of compulsory process in the United States, but could be secured through a French court.  ILFC and Fulford state that these witnesses include former Flash employees, MCA investigators and other persons involved with the investigation in Egypt; and

other Egyptian witnesses with knowledge of either the flight crew's background and abilities or Flash's operations as an air charter service; and

    \*    that dismissal is warranted to avoid the possibility of inefficient and duplicative proceedings, inconsistent results, and prejudice to ILFC and Fulford resulting from litigating the accident's cause without Flash's presence.

In response, plaintiffs argue that ILFC and Fulford have not met their burden of proving that the private interest factors strongly favor dismissal. They say that the claims against defendants in this lawsuit center on the defendants' actions with regard to the aircraft while in the United States; that the witnesses and documentation concerning those actions are located here; and that while, admittedly, evidence concerning plaintiffs' damages is not located in the United States, the presentation of proof of damages is the plaintiffs' burden.

While it is true that plaintiffs bear the burden of proving damages, defendants have the right to present evidence on the issue and are entitled to some consideration with respect to convenience in the matter. The Court believes defendants have, indeed, shown that private interest factors favor granting the dismissal under the conditions mentioned.

    (b) **Public Interest Factors** -- With regards to the public

interest factors, ILFC and Fulford argue the following:

* that France has the greatest interest in the outcome of the controversy; the United States' interest is minimal. *See* Gambra, 377 F.Supp.2d at 825; and

* that this Court need not become embroiled in the complexities of choice-of-law and the application of foreign law.

In response, plaintiffs again argue that the movants have failed to meet their burden of proof. They say that the stated causes of action stem from wrongful acts concerning the defendants' "products in the U.S." Plaintiffs further argue that while France, Egypt and other countries may have an interest in the litigation at bar, the United States has a very significant interest as the home forum of the defendants and as the forum where the defendants' alleged tortious conduct occurred.

The Court believes defendants have the better argument on this point.

9. Based upon a thorough review of the pleadings of the parties and all other matters relevant to the case, the Court finds that the following factors support dismissal on the basis of forum non conveniens:

* Critical witnesses and evidence will be more efficiently and effectively obtained through the French

proceeding.

* ILFC is currently facing similar charges in the French proceeding and the continuation of this proceeding risks the possibility of inconsistent results.

* The continuation of this proceeding against ILFC does not support judicial economy, as ILFC is currently facing similar charges in France.

* The continuation of this proceeding risks prejudice to ILFC and Fulford resulting from litigating the accident's cause without Flash's presence, or the ability to secure witnesses with regard to Flash's actions.

Accordingly, the Court concludes that **International Lease Finance Corporation and David G. Fulford's Motion to Sever and Dismiss Based on *Forum Non Conveniens*, or in the Alternative, To Strike and Dismiss for Failure to State a Claim and Lack of Capacity to Sue** (document #19) should be **granted** on the basis of forum non conveniens.

10. Further, the Court finds and orders that the movants' dismissal on forum non conveniens grounds should be conditioned upon the following as suggested and agreed to by defendants:

* the agreement of ILFC and Fulford to submit to the jurisdiction of a French court in actions refiled by the plaintiffs there;

*   the agreement of ILFC and Fulford to the tolling of any statute of limitations that might apply to such refiled actions for a period of 120 days after dismissal by this Court; and,

*   a French court's assumption of jurisdiction over the plaintiffs' claims

IT IS SO ORDERED.

/S/JIMM LARRY HENDREN
JIMM LARRY HENDREN
UNITED STATES DISTRICT JUDGE